IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-03241-CMA-BNB

ADAM DMYTRYSZYN,

Plaintiff,

v.

TOM CLEMENTS, Executive Director,
LT. BERNADETTE SCOTT,
CAPTAIN T. SCOTT,
LT. MAGGELSON,
MAJOR BILDERAVA,
CAPTAIN BOLT,
SERGEANT STEPHEN LADD, and
SUPERINTENDENT JAMES FALK,

Defendants.

_____

### **AMENDED[1] RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the **Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and (6)** [Doc. #40, filed 02/13/2014] (the "Motion") brought by defendants Bernadette Scott; T. Scott; Maggelson; Bilderava; Bolt; Ladd; and Falk.[2]  I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

### **I.  STANDARD OF REVIEW**

---

[1] The analysis of Claim Four is amended to delete the phrase "the Report is not protected under the First Amendment."  The deletion does not change the substance of the analysis.

[2] On November 12, 2013, the Office of Legal Services for the Colorado Department of Corrections filed a Waiver of Service of Summons [Doc. #33].  Service of process was waived for all defendants except defendant Clements because Clements "is deceased and no longer a current DOC employee."

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of

the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiff is currently incarcerated by the Colorado Department of Corrections ("DOC") at the Sterling Correctional Facility ("SCF"). He filed his Amended Prisoner Complaint on August 22, 2013 [Doc. #28] (the "Complaint"). The Complaint contains the following allegations:

1. On July 24, 2008, the plaintiff was arrested and charged with felony menacing. The police officer who investigated the matter at the scene questioned the alleged victim in the presence of three eye witnesses. The victim lied to the officer. The eye witnesses heard what the victim told the officer and incorporated the victim's lies into their written statements. *Complaint*, p. 6.[3]

2. At the plaintiff's trial on March 23, 2009, the prosecutor instructed the witnesses to read their written statements before they testified "in order to influence them to testify falsely and consistently with their false statements." Id.

---

[3]The Complaint is not consecutively paginated. Therefore, I cite to the pages of the Complaint as they are assigned by the court's docketing system.

3. The police officer's failure to separate the witnesses during the questioning tainted the plaintiff's trial, and the plaintiff was wrongly convicted as a result. Id. at pp. 6-7. He was adjudicated an habitual criminal and sentenced to 12 years in prison. His appeal was dismissed, and his conviction became final on May 11, 2012. Id. at p. 7.

4. The plaintiff has been preparing a motion for post-conviction relief to challenge his conviction. One of the claims he wants to raise is "outrageous government conduct or unfair trial based on the police officer's improper handling of the eye witnesses." Id.

5. The United States Department of Justice has developed a report which contains "national guidelines for police investigators to reduce the likelihood of wrongful convictions" (the "Report"). "The guidelines explicitly instruct investigators to separate witnesses before interviewing them." Id.

6. The plaintiff ordered a copy of the Report so he could cite to it in his motion for postconviction relief. On November 14, 2012, prison officials opened the Report, read it, and sent it to the SCF Reading Committee "to determine whether it contained information that constituted a danger to a person or a threat to the security and safety of the facility." Id. at p. 8.

7. "According to DOC Administrative Regulation 300-38, mail from the U.S. Dept. of Justice is not privileged. The AR was signed by executive director, Tom Clements." The Report was opened pursuant to that policy. Id.

8. Because the envelope containing the Report was clearly marked as being sent from the Department of Justice, it was privileged and should not have been opened without the plaintiff present "or read without a warrant." The opening of his mail "as authorized by Tom

Clements" deprived the plaintiff "of his right to privileged correspondence and freedom of speech in violation of the First and Fourteenth Amendment[s]." Id.

9. The plaintiff received a Notice of Rejection/Disposition of Mail, which indicated that the Report had been sent to the Reading Committee. He requested from his case manager a form to appeal the decision. He was told that there was no such form and to send a request for an interview to Lt. Scott in the mail room. He sent the request to defendant Lt. Bernadette Scott, arguing that the Report was not a threat to the security of the facility. Id. at p. 9.

10. The Reading Committee consists of defendants Lt. Bernadette Scott, Captain T. Scott, Lt. Maggelson, Major Bilderava, and Captain Bold. On December 4, 2012, the Reading Committee censored the Report "on the grounds that it posed a potential threat to the safety and security of the offender population or DOC employees by advocating facility disruption or noncompliance with prison rules and regulations." Id.

11. The plaintiff was denied an opportunity to appeal the decision. The decision was automatically reviewed and upheld by defendant Superintendent James Falk. Id.

12. The defendants' decision to censor the Report deprived the plaintiff of his First and Fourteenth Amendment rights to freedom of speech and to receive publications. The defendants' failure to provide the plaintiff with an opportunity to be heard or appeal the decision violated his due process rights. Id. at p. 10.

13. "The defendants' censorship of the report caused a delay in the plaintiff's preparation of his motion for postconviction relief that resulted in the lapse of the one year statute of limitations on his right to seek federal habeas corpus relief. As of May 11, 2013, the plaintiff is forever barred from seeking federal review of his wrongful conviction." Id. at p. 11.

14. Because the Report was essential to the plaintiff's ability to research and prepare his motion for postconviction relief, and because the delay in preparation of the motion resulted in a lapse of the limitation period for filing a federal habeas petition, the defendants deprived the plaintiff of his right to access the court in violation of the First and Fourteenth Amendments. Id. at pp. 11-12.

15. The plaintiff asked a friend, Paul Redd, to download a copy of the Report from the internet and have an attorney send it to the plaintiff as legal mail. Mr. Redd complied with the plaintiff's request. Don Pope, a licensed Colorado attorney, mailed the Report to the plaintiff with a hand-written letter in an envelope that was marked as privileged legal mail. Id. at p. 13.

16. On February 5, 2013, defendant Sergeant Stephen Ladd opened the envelope in the plaintiff's presence, read the letter and the first page of the Report, scanned the rest of the Report, and stated "this isn't legal mail; this is a brochure." Sergeant Ladd refused to give the letter and Report to the plaintiff and returned them to the mail room after letting another correctional officer read them. The Mail Room rejected them because they were not legal mail, and the plaintiff was required to send them out of the prison. As a result, the plaintiff was delayed in the preparation of his motion for postconviction relief, and "the statute of limitation ran out on his right to seek federal habeas corpus relief." Id.

17. Defendant Ladd deprived the plaintiff "of his rights to receive privileged correspondence and of access to the courts in violation of the First and Fourteenth Amendments." Id. at p. 14.

The Complaint asserts five claims. On November 7, 2013, the court dismissed Claim Five and defendant Lt. Jerri MacIntosh [Doc. #30].

Claim One is brought against defendant Clements for promulgating a policy that authorized DOC officials to open mail from the Department of Justice and which deprived the plaintiff "of his right to privileged correspondence and freedom of speech in violation of the First and Fourteenth Amendment[s]."

Claim Two alleges that defendants Bernadette Scott, T. Scott, Maggelson, Bilderava, Bolt, and Falk's decision to censor the Report deprived the plaintiff of his First and Fourteenth Amendment rights to freedom of speech and to receive publications. Claim Two further alleges that their failure to provide him with an opportunity to be heard or appeal the decision violated his procedural due process rights.

Claim Three alleges that the Report was essential to the plaintiff's ability to research and prepare his motion for postconviction relief and, because the delay in preparation of the motion resulted in a lapse of the limitation period for filing a federal habeas petition, defendants Bernadette Scott, T. Scott, Maggelson, Bilderava, Bolt, and Falk deprived the plaintiff of his right to access the court in violation of the First and Fourteenth Amendments.

Claim Four alleges that defendant Ladd deprived the plaintiff "of his rights to receive privileged correspondence and of access to the courts in violation of the First and Fourteenth Amendments."[4]

The plaintiff seeks declaratory and injunctive relief. Id. at p. 17. He also seeks compensatory and punitive damages. Id. at p. 18.

---

[4] Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

### III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Official Capacity Claims

The defendants assert that the plaintiff's claims for monetary damages against them in their official capacities are barred by Eleventh Amendment immunity. *Motion*, pp. 3-4. The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their official capacities as to retroactive monetary relief, but not as to prospective injunctive relief. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102-03,105-06 (1984). The defendants are employed by the DOC. *Complaint*, pp. 2-3. The DOC is an agency or subdivision of the State of Colorado. Consequently, the Eleventh Amendment bars suit against these defendants in their official capacities for retroactive monetary relief.

However, the plaintiff is suing the defendants only in their individual capacities, *Complaint*, pp. 2-4; *Plaintiff's Response to the Defendants' Motion to Dismiss* [Doc. #46] (the "Response"), p. 4, and the Motion should be denied insofar as it seeks dismissal of the claims against the defendants in their official capacities for retroactive monetary relief based on Eleventh Amendment immunity.

### B. Individual Capacity Claims

The defendants assert that they are entitled to qualified immunity. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[5]

---

[5] The order in which I may consider these factors is discretionary. Pearson v. Callahan, 555 U.S.223, 236 (2009). However, both prongs must be satisfied. Herrera v. City of Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

### 1. Claim One

Claim One is brought against defendant Clements in his individual capacity for promulgating a policy which authorized DOC officials to open mail from the Department of Justice and which deprived the plaintiff "of his right to privileged correspondence and freedom of speech in violation of the First and Fourteenth Amendment[s]."[6] *Response*, p. 36, first full paragraph.

An individual cannot be held liable under section 1983 unless she caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order to hold a supervisor liable under section 1983, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotations and citation omitted). Without a showing of personal involvement in the alleged constitutional violation, liability will not be imposed on a supervisory official. Id. at 1163.

The Complaint does not contain any factual allegations to show that defendant Clements was responsible for the operation of a policy that deprived the plaintiff of privileged mail or denied his right to freedom of speech. Indeed, the plaintiff does not identify any material in the Report that could be classified as "privileged," nor does he allege any facts to show that opening

---

[6]Although defendant Clements has not been served with process, I address this claim in the interest of judicial economy.

the report violated his right to free speech.  Claim One should be dismissed for failure to state a claim upon which relief can be granted.

### 2. Claim Two

#### a. First Amendment Claim

In Claim Two, the plaintiff alleges that the SCF Reading Committee, which consists of defendants Bernadette Scott, T. Scott, Maggelson, Bilderava, Bolt, and Falk, censored the Report "on the grounds that it posed a potential threat to the safety and security of the offender population or DOC employees by advocating facility disruption or noncompliance with prison rules and regulations."  He claims that the decision to censor the Report violated his First and Fourteenth Amendment rights to freedom of speech and to receive publications.[7]

The First Amendment to the United States Constitution provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. Const. amend. I. The First Amendment applies to the states through the Fourteenth Amendment.  44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 489 n.1 (1996).

Although inmates retain First Amendment rights, those rights are not without reasonable limitations.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives--including deterrence of crime, rehabilitation of prisoners, and institutional security."  Id.  "Inmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate

---

[7] The plaintiff is challenging the decision to censor the Report; he is not presenting a facial challenge to the policy or regulation underlying the decision. *Response*, p. 32, second full paragraph.

12

penological objectives of the prison." Jacklovich v. Simmons, 392 F.3d 420, 426 (10th Cir. 2004).

The defendants argue that the plaintiff admits the Report contains "information regarding the techniques that should be used by law enforcement officers investigating crimes that involve eye witnesses"; the Report would provide inmates with information regarding how investigations involving eye witnesses are performed; and the information in the Report "could obviously be used to undermine the security measures and investigation techniques of corrections officers, who are involved in investigating the illicit or criminal activities that take place in prisons on a daily basis." *Motion*, p. 7.

"[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." Pell v. Procunier, 417 U.S. 817, 822-23 (1974). The plaintiff's sole allegations regarding the content of the Report is that it contains "national guidelines for police investigators to reduce the likelihood of wrongful convictions" and that it "explicitly instruct[s] investigators to separate witnesses before interviewing them." *Complaint*, p. 7. The allegations of the Complaint do not indicate that the Report contains information that "posed a potential threat to the safety and security of the offender population or DOC employees by advocating facility disruption or noncompliance with prison rules and regulations." Therefore, I cannot say, based on the allegations of the Complaint, that the Report was confiscated pursuant to the legitimate penological goal of institutional safety.

The plaintiff has sufficiently alleged facts to plausibly support a claim for violation of his First Amendment rights. The Motion should be denied insofar as it seeks dismissal of Claim Two's allegations regarding the First Amendment.

### b. Due Process Claim

Claim Two further alleges that the plaintiff's procedural due process rights were violated when defendants Bernadette Scott, T. Scott, Maggelson, Bilderava, Bolt, and Falk's failed to provide him with an opportunity to be heard on or appeal the Reading Committee's decision.[8]

The plaintiff's due process rights are triggered only if he has been deprived of a protected liberty or property interest. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989). The defendants argue that the plaintiff does not have a liberty interest in "reading materials that assist inmates in undermining the security techniques of law enforcement corrections officers." *Motion*, p. 12. Although inmates do not have a liberty interest in information that is not protected by the First Amendment, Procunier v. Martinez, 416 U.S. 396, 417-18 (1974) *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989), it is unclear from the Complaint's scant allegations whether the Report undermines prison security or whether it is protected by the First Amendment.

The defendants also argue that the plaintiff received all the process he was due because "the decision of the Reading Committee was 'automatically reviewed and upheld' in an apparent appeal to the prison Warden." *Motion*, p. 12. "[T]he availability of procedures for appealing the decision to withhold . . . mail satisfies due process." Taylor v. Cody, 89 F.3d 851, 1996 WL 350782 at *1 (10th Cir. June 26, 1996) (citing Procunier, 416 U.S. at 417-19). Here, the plaintiff alleges that he was denied "an opportunity to be heard or appeal the decision." *Complaint*, p. 10.

---

[8]The plaintiff does not claim that his substantive due process rights were violated. *Response*, p. 32, second full paragraph.

Those allegations are sufficient to state a plausible claim that he was denied his procedural due process rights. The Motion should be denied to the extent it seeks dismissal of Claim Two's due process allegations.

### Claim Three

Claim Three alleges that because the Report was essential to the plaintiff's ability to research and prepare his motion for postconviction relief, and because the delay in preparation of the motion resulted in a lapse of the limitation period for filing a federal habeas petition, defendants Bernadette Scott, T. Scott, Maggelson, Bilderava, Bolt, and Falk deprived the plaintiff of his right to access the court in violation of the First and Fourteenth Amendments.

The right of access to the courts is a fundamental constitutional right. Bounds v. Smith, 430 U.S. 817, 828 (1977). However, an inmate alleging denial of access to the courts must allege an actual injury. Lewis v. Casey, 518 U.S. 343, 349 (1996). To establish actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim." Id. at 356. Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing Lewis, 518 U.S. at 351); Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010) ("a prisoner must demonstrate actual injury from interference with his access to the courts--that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement").

Shortly after he initiated this case, the plaintiff filed a motion seeking a restraining order to prevent the defendants from destroying the Report and a preliminary injunction requiring them to provide the Report to him so that he could use them to prepare his postconviction motion

[Doc. #4]. The court denied his motion [Doc.#9], and the plaintiff appealed the denial [Doc. #10]. The Tenth Circuit affirmed the denial [Doc. #19] stating:

> Plaintiff Adam Dmytryszyn, a Colorado state prisoner, appeals from an order by the United States District Court for the District of Colorado denying his motion for a preliminary injunction against Defendants, who are all current or former employees of the Colorado Department of Corrections. He alleged that Defendants denied him his constitutional right of access to the courts by confiscating a Department of Justice report containing information that would be helpful to him in pursuing state postconviction remedies. Exercising jurisdiction under 28 U.S.C. § 1292(a)(1), we affirm because Dmytryszyn has not demonstrated that his state postconviction claim is nonfrivolous.
>
> Dmytryszyn wishes to challenge his state-court menacing conviction on the ground that police used an improper procedure in interviewing witnesses to his crime. To develop the basis for this claim, he requested a copy of a National Institute of Justice report containing Department of Justice guidelines for lawenforcement use of eyewitness evidence. But when a copy of the report addressed to him arrived at the prison, prison officials refused to give it to him, contending that it posed a threat to the safety and security of the prison. Dmytryszyn brought suit in district court under 42 U.S.C. § 1983, alleging, among other things, that the officials' confiscation of the report violated his First Amendment right of access to the courts. He moved for a temporary restraining order to prevent the officials from destroying the report and a preliminary injunction requiring them to give him the report. The district court denied his motion, and Dmytryszyn appealed.
>
> We review for abuse of discretion the district court's decision denying the motion for a preliminary injunction. See Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010). To obtain a preliminary injunction, Dmytryszyn had to demonstrate "(1) a likelihood of success on the merits; (2) a likelihood that [he would] suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in [his] favor; and 4) that the injunction is in the public interest." Id. at 1251 (internal quotation marks omitted).
>
> The first requirement is dispositive. To establish denial of access to the courts, Dmytryszyn must show "actual injury from

> interference with his access to the courts--that is, that [he] was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010) (emphasis added). Dmytryszyn has not adequately alleged such injury. He claims only that he needs the confiscated report to provide persuasive authority that will help establish his claim that "the police officer committed misconduct in [his] case" by failing to "separate witnesses during questioning." Aplt. Br. at 9.
>
> Dmytryszyn fails, however, to explain how he can bring such a claim in a motion for postconviction relief in Colorado state court. The Colorado Rules of Criminal Procedure provide that in deciding a motion for postconviction relief, "[t]he court shall deny any claim that was raised and resolved in a prior appeal or postconviction proceeding on behalf of the same defendant," subject to certain exceptions not implicated here. Colo. R. Crim. P. 35(c)(3)(VI). They also state that "[t]he court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought," id. at 35(c)(3)(VII) (emphasis added), again subject to exceptions not applicable to Dmytryszyn's claim. Dmytryszyn has not explained, nor can we imagine, why a claim that police officers used improper interviewing techniques could not have been raised on direct appeal. And if it was in fact raised, it must have been denied and cannot be raised again in postconviction proceedings. *Because a Colorado court would be bound to reject Dmytryszyn's claim if raised in a postconviction motion, the claim is legally frivolous.* Thus, the district court did not abuse its discretion in denying Dmytryszyn's motion for a preliminary injunction.
>
> We AFFIRM the district court's denial of Dmytryszyn's motion.

(Emphasis added).

The Tenth Circuit has determined that the plaintiff's access to the court claim is legally frivolous. The circuit court's ruling is the law of the case. See McIlravy v. Kerr-McGee Coal Corp., 204 F.3d 1031, 1034-35 (10th Cir. 2000) (stating that when a court decides upon a rule of law, that decision should govern the same issues in subsequent stages of the case). The Motion should be granted insofar as it seeks dismissal of Claim Three.

17

### 4. Claim Four

Claim Four alleges that defendant Ladd deprived the plaintiff "of his rights to receive privileged correspondence and of access to the courts in violation of the First and Fourteenth Amendments." As discussed above, confiscation of the Report did not violate the plaintiff's right to access the courts. Nor did it violate any right to receive privileged correspondence. The plaintiff alleges that after the Report was first confiscated, he had his friend find an attorney to re-send the Report to the plaintiff. There are no allegations that the plaintiff had any kind of attorney-client relationship with the attorney. The Motion should be granted insofar as it seeks dismissal of Claim Four.

### IV. CONCLUSION

I respectfully RECOMMEND that the Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) and (6) [Doc. #40] be DENIED to the extent it seeks dismissal of Claim Two and GRANTED insofar as it seeks dismissal of Claims One, Three, and Four.[9]

---

[9] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated May 6, 2014.

                                        BY THE COURT:

                                        s/ Boyd N. Boland
                                        United States Magistrate Judge