**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-03241-CMA-NYW

ADAM DMYTRYSZYN,

      Plaintiff,

v.

TOM CLEMENTS, Executive Director,
LIEUTENANT BERNADETTE SCOTT,
CAPTAIN T. SCOTT,
LIEUTENANT MAGELSON,
MAJOR BILDERAVA,
CAPTAIN BOLT,
SUPERINTENDANT JAMES FALK, and
STEPHEN LADD,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

_____

Magistrate Judge Nina Y. Wang

      This matter comes before the court on the Motion for Summary Judgment of

Defendants Bilderaya,[1] Bolt, Falk, Ladd, Magelssen,[2] B. Scott and T. Scott (collectively,

_____

[1] The court uses the spelling "Bilderaya" because this is the way Mr. Bilderaya spells his name in his Affidavit submitted in support of the Motion for Summary Judgment. [#98-4]. The court notes, however, that Mr. Bilderaya's name is spelled differently in the caption and in other filings in this case.

[2] The court uses the spelling "Magelssen" because this is the way Mr. Magelssen spells his name in his Affidavit submitted in support of the Motion for Summary Judgment. [#98-2]. The court notes, however, that Mr. Magelssen's name is spelled differently in the caption and in other filings in this case. To the extent that this case proceeds, it may

"Defendants").   [#98, filed June 17, 2015].   The Motion for Summary Judgment was referred to this Magistrate Judge pursuant to the Order Referring Case dated November 18, 2013 [#36], the Reassignment dated February 9, 2015 [#69] and the Memorandum dated June 18, 2015 [#81].   The court has reviewed the Motion for Summary Judgment, the affidavits and exhibits, the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.   For the reasons stated below, the court respectfully **RECOMMENDS** that the Motion for Summary Judgment be **GRANTED**.

## BACKGROUND AND PROCEDURAL HISTORY

On December 12, 2012, Plaintiff filed his original Complaint in this case.   [#1].   At the time of filing, Mr. Dmytryszyn was incarcerated by the Colorado Department of Corrections at the Sterling Correctional Facility ("SCF").   [*Id.* at 6].   Mr. Dmytryszyn filed the action under 42 U.S.C. § 1983 alleging deprivation of his right to correspond, censorship of a publication, and denial of access to the courts in violation of the First and Fourteenth Amendments.   [*Id.* at 4].   He sought declaratory and injunctive relief and damages.   [*Id.*].   All of the named Defendants are or were employees of the Colorado Department of Corrections.   On the same day the Complaint was filed, Plaintiff also filed a Motion for a Temporary Restraining Order and Preliminary Injunction, requesting the court to order the Defendants not to destroy the publication to which the claims in this case pertain and to give the publication to him.   [#4].   The Motion for a Temporary Restraining Order and Preliminary Injunction was denied on December 17, 2012 because the court found that Mr. Dmytryszyn had not established a substantial likelihood of success on the merits for his claims.   [#9 at 3-4].

---

be appropriate to amend the caption to reflect the correct spellings of Defendants Magelssen and Bilderaya.

Mr. Dmytryszyn then filed a notice of appeal of the court's order denying a temporary restraining order or preliminary injunction. [#10]. The Tenth Circuit affirmed the district court's denial of the motion. [#19 at 4]. The Tenth Circuit found that there was no likelihood of success on the merits for Mr. Dmytryszyn's First Amendment claim premised on violation of his right of access to the courts because Mr. Dmytryszyn would be barred from bringing the underlying claim for which he sought the publication at issue in Colorado state court due to the rule barring "any claim that was raised and resolved in a prior appeal or postconviction proceedings on behalf of the same defendant." [*Id.* (citing Colo. R. Crim. P. 35(c)(3)(VI))].

After resolution of Mr. Dmytryszyn's appeal, the district court issued an order finding that Mr. Dmytryszyn failed to allege the personal participation of each named Defendant in the asserted constitutional violations. [#20 at 3]. Accordingly, the court ordered him to file an amended complaint in which he named only those persons that he contended actually violated his federal constitutional rights. [*Id.* at 3, 6].

On August 22, 2013, Mr. Dmytryszyn filed an Amended Complaint, which is now the operative complaint in the case. [#28]. In the Amended Complaint, Mr. Dmytryszyn asserted five claims pertaining to constitutional violations arising from Defendants' censorship of a free publication from the U.S. Department of Justice entitled "Eyewitness Evidence: A Guide for Law Enforcement" (*Eyewitness Guide*"). [*Id.* at 7-8]. Mr. Dmytryszyn requested the publication, and the Department of Justice sent it to him; however, he never received it because it was intercepted in the prison mail room and submitted to review by a board on which several of the named Defendants sit. The review board determined that the *Eyewitness Guide* contained information that was

3

potentially harmful to the inmates and/or corrections officers, and therefore censored it in its entirety.

Mr. Dmytryszyn alleged a number of constitutional violations of the First and Fourteenth Amendments arising from Defendants' actions surrounding the publication. *See* [*id.* at 6-15]. He asserted claims of violations of his First and Fourteenth Amendment rights, including rights to free speech and privileged correspondence (claim one); rights to free speech and freedom from censorship (claim two); right of access to the courts (claim three); and rights to privileged correspondence and access to the courts (claim four). Mr. Dmytryszyn alleged that the late Tom Clements instituted and enforced the prison's censorship policy; Sergeant Stephen Ladd confiscated the *Eyewitness Guide* as nonlegal mail; and the following individuals as members of the prison reading committee censored the report: Lieutenant Bernadette Scott, Captain T. Scott, Lieutenant Magelssen, Major Bilderaya, and Captain Bolt. Mr. Dmytryszyn also sued James Falk, prison superintendent, for upholding the reading committee's decision. On November 7, 2013, the court dismissed as legally frivolous claim five of the Amended Complaint, which named Lieutenant Jerri MacIntosh as a Defendant because he denied a grievance Mr. Dmytryszyn filed concerning the incident. [#30 at 4].

On February 13, 2014, Defendants Bilderaya, Bolt, Falk, Ladd, Magelssen, B. Scott, and T. Scott moved to dismiss the Amended Complaint. [#40]. The presiding judge in this action, the Honorable Christine M. Arguello, adopted the Report and Recommendation of Magistrate Judge Boyd Boland on the Motion to Dismiss on July 15, 2014. [#57]. Judge Arguello's order dismissed claims one, three, and four of the

Amended Complaint.   [*Id.* at 4].   Accordingly, the only claim remaining in the case is claim two regarding Mr. Dmytryszyn's rights to free speech and freedom from censorship.[3]   Mr. Dmytryszyn's requests for relief associated with claim two were:  (1) a declaratory judgment that "defendants Bernadette Scott, T. Scott, Bilderava, Magelson, Bolt, and Falk violated the plaintiff's right to free of speech and receive publications by censoring the report, Eyewitness Evidence" and (2) an injunction enjoining the defendants from censoring the report and requiring them to allow the plaintiff to possess and use it." [#28 at 17].  Plaintiff also made a demand for compensatory and punitive damages as well.  [*Id.* at 18].

On June 17, 2015, Defendants filed a Motion for Summary Judgment arguing that Mr. Dmytryszyn's claims for injunctive relief are moot, he has not stated a viable claim for a declaratory judgment against the Defendants in their official capacities, he has failed to state viable First Amendment and procedural due process claims, and Defendants are entitled to qualified immunity.   [#98].   Defendants also argue in the alternative that Mr. Dmytryszyn fails to state a viable claim for monetary damages.  [*Id.* at 24].  Mr. Dmytryszyn did not file a response to the Motion for Summary Judgment within the timeframe provided by D.C.COLO.LCivR 56.1, and has not done so to date. Therefore, the Motion for Summary Judgment is ripe and now before this court for Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[4]

---

[3] Although Defendants Clements and Ladd are currently named in the caption, the court notes that claim two does not pertain to either one of these Defendants. *See* [#28 at 9-10; #109 at 1].   There is no surviving claim against Defendant Clements in either an individual or official capacity, as acknowledged by Mr. Dmytryszyn [#109], which accounts for why Mr. Raemisch was not substituted as a party to this action, or served.

[4] On December 3, 2015, pursuant to an Order of Dismissal based on Plaintiff's failure to pay a required fee [#110], the Clerk of Court entered final judgment in favor of

**STANDARD OF REVIEW**

The standard for summary judgment is well established.  Summary judgment is appropriate upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The question of which facts are material is governed by the substantive law relating to the plaintiff's claims.  *Id.* at 248.  A dispute over a material fact is "genuine" when the evidence is such that a reasonable jury could find for the non-movant.  *Id.*  "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.  *Shapolia v. Los Alamos Nat'l. Lab*, 992 F.2d 1033, 1036 (10th Cir. 1993).

The court must view the facts in the light most favorable to the non-movant and allow the non-movant the benefit of all reasonable inferences to be drawn from the evidence.  *See, e.g.*, *United States v. O'Block Oak*, 788 F.2d 1433, 1435 (10th Cir. 1986).  The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the non-movant for a finder of fact to return a verdict in that party's favor.  *Anderson*, 477 U.S. at 249.  The court therefore performs a threshold inquiry determining whether a trial is necessary.  *Id.* at 250.

---

Defendants and against Plaintiff.  [#111].  After final judgment was entered, it was determined that Plaintiff, in fact, did pay the required fee.  Accordingly, the final judgment was vacated and the case was reopened on December 11, 2015, thereby reinstituting the docket as it stood when the case was closed.  [#113].

Because Mr. Dmytryszyn appears before the court *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  This rule "applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991) (citations omitted).   However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *see also Firstenberg v. City of Santa Fe, New Mexico*, 696 F.2d 1018, 1024 (10th Cir. 2012) ("[T]he generous construction" that is afforded pro se pleadings has limits, and the court "must avoid becoming the plaintiff's advocate.") (citation omitted).

As of this date, Mr. Dmytryszyn has not filed any response to the pending Motion for Summary Judgment.   Rule 56(e) specifically contemplates the consequences of failing to oppose a summary judgment motion:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided by this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

*See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970) (the burden on the nonmovant to respond arises only if the summary judgment motion is properly "supported" as required by Rule 56(c)), *superseded on other grounds by Celotex Corp v. Catrett*, 477 U.S. 317 (1986).  "Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under

7

Rule 56(c)." *Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002). "If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Id.*; *see also Armstrong v. Swanson*, No. 08-cv-00194-MSK-MEH, 2009 WL 1938793, at * 7 (D. Colo. July 2, 2009) ("When a party with the burden of proof fails to respond to a motion for summary judgment, the motion is not reflexively granted; rather, the Court simply deems the non-movant to have waived the opportunity to assert any additional facts and examines whether the facts asserted by the movant warrant a trial or permit entry of judgment as a matter of law.") (citation omitted); *Barton v. City and Cty. of Denver*, 432 F. Supp. 2d 1178, 1188 (D. Colo. 2006).

Because the Amended Complaint was sworn under penalty of perjury, *see* [#28 at 17], the court may treat it as an affidavit. *Green v. Branson,* 108 F.3d 1296, 1301 n.1 (10th Cir. 1997). Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted); *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).") (internal quotation marks and citation omitted). "[T]here may be cases where the sole reliance on a verified

complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).  Given the factual and legal background, the court now turns to the consideration of the instant Motion.

## ANALYSIS

Mr. Dmytryszyn brings his claims pursuant to 42 U.S.C. § 1983, seeking a declaratory judgment that Defendants violated his "right to freedom of speech and receive publications by censoring the report, Eyewitness Evidence." [#28 at 9-10, 17]. Section 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law." *Adickes*, 398 U.S. at 147, 150.  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  "In order to successfully state a cause of action under section 1983, [Plaintiffs] must allege . . . the deprivation of a federal right and that the alleged action was taken under color of state law." *S. Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1265 (10th Cir. 1998) (internal quotation marks and citation omitted).

## I.  Undisputed Facts

The following undisputed facts are set forth with the rules governing summary judgment in mind.

Pursuant to Administrative Regulation 300-38, non-legal mail items sent to offenders are subject to inspection by CDOC employees.  [#28 at 8; #98-1 at ¶ 3].

CDOC mailroom staff members inspect the mail and may reject items of mail that are contraband, mislabeled, or warrant review by the Facility Reading Committee.  [#98-1 at ¶ 4].  If a mailroom staff member identifies an item of mail that causes concerns such as concerns that the content of the item could compromise the safety of a person or prison safety and security, the mailroom staff member may segregate that item of mail and direct it to the Facility Reading Committee for the Committee's consideration.  [#98-1 at ¶ 5].

When a publication that has been mailed to an offender is rejected by mailroom staff and sent to the Facility Reading Committee for review, the offender to whom the mail was sent is served with a Notice of Rejection/Disposition of Mail, which was a form attached to Administrative Regulation 300-38.  [#98-1 at ¶ 8].  Upon receipt of a Notice of Rejection/Disposition of Mail, an offender has 14 days in which to file an appeal of the confiscation of the item of mail, after which the Facility Reading Committee will review the item of mail and determine whether it should be permitted or censored.  [#98-1 at ¶ 10].  An offender can obtain the form for an appeal, Form A attached to AR 300-26, from a case manager (his own or other case managers) or from the prison library.  [#98-1 at ¶¶ 11-13].  The members of the Facility Reading Committee do not have a role in providing appeal forms to offenders or submitting appeal forms.  [#98-1 at ¶ 14, 16].

Mr. Dmytryszyn's remaining claim in this case pertains to the decision by prison officials to censor the *Eyewitness Guide*.  *See* [#28 at 9-10].  Mr. Dmytryszyn asserts that the Facility Reading Committee, which consisted of Lieutenant Bernadette Scott, Captain T. Scott, Lieutenant Magelssen, Major Bilderaya, and Captain Bolt, reviewed the *Eyewitness Guide* and censored it in its entirety on the grounds that it posed a

10

potential threat to the safety and security of the offender population or Department of Corrections ("DOC") employees by advocating facility disruption or noncompliance with prison rules and regulations.  [#28 at 9; #98-1 at ¶¶ 26-27].

Mr. Dmytryszyn requested and was sent the *Eyewitness Guide*, a free publication from the U.S. Department of Justice.  [#28 at 7-8].  The U.S. Department of Justice, U.S. Parole Commission sent the *Eyewitness Guide* to Mr. Dmytryszyn on or around November 14, 2012.  [#28 at 8; #98-1 at ¶25].   When the package containing the *Eyewitness Guide* arrived at the prison on November 14, 2012, a prison employee in the SCF mail room opened the envelope containing the *Eyewitness Guide*, determined that it needed further review, and sent to the Facility Reading Committee for further evaluation to determine whether it contained information that posed a danger to a person or a threat to the security and safety of the facility.  [#28 at 8].  The employee filled out a Notice of Rejection/Disposition of Mail form and dated it November 14, 2012.  [#98-1 at ¶ 29; *id.* at 111].

Mr. Dmytryszyn received the Notice of Rejection/Disposition of Mail informing him that the *Eyewitness Guide* had been sent to the Facility Reading Committee for review.  [#28 at 9].  Mr. Dmytryszyn requested a form from his case manager, Brian Uhrich, to make a statement or appeal the decision.  [#28 at 9].  Mr. Uhrich informed Mr. Dmytryszyn that there was no form (despite the fact that there was a form), and told Mr. Dmytryszyn to send a request for an interview with Lieutenant Scott in the mail room.  [#28 at 9].  Mr. Dmytryszyn did not file the required to initiate an appeal to the Facility Reading Committee.  [#28 at 9; #98-1 at ¶ 32].

In early December, after the fourteen days for Mr. Dmytryszyn to file an appeal had passed, the Facility Reading Committee met to consider the *Eyewitness Guide*. [#98-1 at ¶ 31].  On December 4, 2012, the Facility Reading Committee, which included Defendants Bernadette Scott, Tol Scott, Magelssen, Bilderaya, and Bolt,[5] decided to withhold the *Eyewitness Guide* in its entirety on the grounds that it posed a potential threat to the safety and security of the offender population or the DOC employees by advocating facility disruption or noncompliance with prison rules and regulations.  [#28 at 9].  Members of the Reading Committee who reviewed the publication felt that allowing offenders to have this type of information would provide them with a basis from which to develop strategies to hinder law enforcement members who were or would be investigating them or a crime they committed within the facility.  [#98-1 at ¶ 35].  The decision was then reviewed and the final form Publication Censorship Decision was signed by Major Tim Usry, the Administrative Head's Designee, on December 4, 2012. [#98-1 at ¶ 51; *id.* at 112].  Mr. Dmytryszyn states that he was denied an opportunity to appeal the decision.  [#28 at 9].

On December 10, 2012, the Facility Reading Committee received a "kite" (a "Request for Interview" form) from Mr. Dmytryszyn stating: "On Dec. 4, 2012, the Reading Committee censored a publication called, 'Eyewitness Evidence: A Guide for Law Enforcement'. I filed a federal civil right action against you today regarding it, so please do not destroy or dispose of it until the case is resolved. Thanks. Good Luck, All."  [#98-1 at 114].

---

[5] Defendants Stephen Ladd and James Falk were not members of the Facility Reading Committee.  [#98-1 at ¶ 7].

Mr. Dmytryszyn was released from prison and currently resides in Minnesota. [#79, #86 at 2].   Accordingly, his mail is no longer subject to review and confiscation by the Defendants.   In addition, this court compelled Defendants to produce a copy of the document, which is also publicly available on the internet, [#87] and Defendants certify that such production was made. [#89, #98 at 12].   Plaintiff provides no evidence to contradict Defendants' certification that they have sent a copy of the *Eyewitness Guide* to Plaintiff at his last known address. [#89].

## II.   Plaintiff's Claim for Injunctive Relief

Defendant's first argument in the Motion for Summary Judgment is that Plaintiff's claim for injunctive relief is moot.   [#98 at 11-12].   To the extent a claim is moot, this court would lack subject matter jurisdiction over it.   "Article III delimits the jurisdiction of federal courts, allowing us to consider only actual cases or controversies." *Abdulhaseeb*, 600 F.3d at 1311 (internal quotation marks and citation omitted).   "In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world. When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." *Id.* (citation omitted).   "The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction." *Jordan v. Sosa,* 654 F.3d 1012, 1023 (10th Cir. 2011) (internal quotation marks omitted).

Because Mr. Dmytryszyn has been released from custody and because Defendants have produced a copy of the *Eyewitness Guide* to him, Plaintiff's demand

for injunctive relief associated with the *Eyewitness Guide* is moot.   *See Nasious v. Colorado,* 495 F. App'x 899, 903 (10th Cir. 2012) ("[I]t is well-settled that a prisoner's transfer out of a prison moots his requests for . . . injunctive relief against staff at that prison.")   However, because Plaintiff also seeks declaratory relief and monetary relief against Defendants in their individual capacities,[6]   this court finds that it still maintains subject matter jurisdiction over claim two so that its consideration of the pending summary judgment is appropriate.

## III.   Plaintiff's First Amendment Claim

As discussed above, the only remaining claim for relief in this case is claim two, insofar as that claim seeks monetary damages and declaratory relief against the Defendants in their individual capacities for violations of Plaintiff's First and Fourteenth Amendment rights. The court now considers Defendants' arguments that summary judgment in their favor is appropriate because Plaintiff fails to state a viable constitutional claim.   Mr. Dmytryszyn alleges that his First Amendment right to "freedom of speech and receive publications" was violated by Defendants' decision to censor the *Eyewitness Guide.*   [#28 at 10].

"Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the

---

[6]   Defendants argue that Mr. Dmytryszyn's request for retrospective injunctive and declaratory relief against Defendants in their official capacities is barred by the Eleventh Amendment.   [#98 at 12-13].   The court notes, however, that Mr. Dmytryszyn's operative Amended Complaint states only that he is suing each of the Defendants in their individual capacities.   *See* [#28 at 2-4].   Accordingly, the court finds that no such claims for retrospective injunctive or declaratory relief against Defendants in their official capacity may lie because they are not pled in the Amended Complaint [#28] and Defendants' Eleventh Amendment argument regarding whether a plaintiff can maintain an action against defendants in their official capacities is inapposite.

Fourteenth Amendment." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996) (citing

*Procunier v. Martinez*, 416 U.S. 396, 408, (1974)).   "That right is qualified, however, by

the intractable problems of prison safety and security, areas in which prison officials are

far better equipped to deal than the judiciary." *Parkhurst v. Ruettgers*, 974 F.2d 1345

(10th Cir. 1992) (citing *Smith v. Maschner,* 899 F.2d 940, 944 (10th Cir.1990).   "We

therefore review the censorship of a prisoner's incoming mail under a reasonableness

standard: censorship is constitutionally permissible if it is 'reasonably related to

legitimate penological interests.'" *Id.* (quoting *Thornburgh v. Abbott,* 490 U.S. 401, 413

(1989)); *see Turner v. Safely*, 482 U.S. 78, 89 (1987) (outlining factors to weigh when

assessing whether a regulation is reasonable).   "Reasonableness" is assessed using

the standard set out in *Turner*: (1) is it is rationally connected to a legitimate institutional

interest; (2) did Plaintiff have alternative means of exercising his protected right; (3) did

the restriction serve the best interests and safety of the prison population and the

guards; and (4) is the restriction reasonable in the absence of a ready alternative.  *See*

*Turner*, 482 U.S. at 89-90.

    First, the court considers whether censorship of the *Eyewitness Guide* was

rationally connected to a legitimate institutional interest.   "Publications targeted to

general audiences, even when individual inmates solicit these materials, 'reasonably

may be expected to circulate among prisoners' with the potential to exacerbate tensions

and cause disruptive conduct." *Parkhurst v. Lampert*, 418 F. App'x 712, 716 (10th Cir.

2011) (quoting *Thornburgh*, 409 U.S. at 412).   "As a result, the Supreme Court

recognized that 'prison officials [must] be given broad discretion to prevent such

disorder.'"   *Id.* (quoting *Thornburgh*, 409 U.S. at 413).   Here, Defendants have

presented unrebutted evidence that the Facility Reading Committee exercised its discretion to censor the *Eyewitness Guide* because it created a threat to the safety and security of the facility. *See* [#98-1 at ¶ 33]. Members of the Facility Reading Committee who reviewed the publication attested that they each felt that allowing offenders to have the types of information contained in the *Eyewitness Guide* would provide them with a basis from which to develop strategies to hinder law enforcement members who were or would be investigating them or a crime they committed within the facility. [#98-1 at ¶¶ 34-44; #98-2 at ¶¶ 15-26; #98-3 at ¶¶ 15-26; #98-4 at ¶¶ 15-26; #98-5 at ¶¶ 15-26]. The court therefore determines that there is no genuine issue of material fact regarding whether censorship of the *Eyewitness Guide* was logically and rationally related to maintaining prison safety and order.

Second, the court considers whether Mr. Dmytryszyn had alternative means of exercising his asserted rights. *Thornburgh*, 490 U.S. at 417-418. The issue here, as explained by the Supreme Court in *Thornburgh*, is whether the censorship of the *Eyewitness Guide* still "permit[s] a broad range of publications to be sent, received, and read." *Thornburgh*, 490 U.S. at 418. There is no evidence in the record before the court that the Facility Reading Committee's decision to withhold the *Eyewitness Guide* as contraband prevented Mr. Dmytryszyn from receiving any other publication regarding witness questioning and preparation tactics, provided that the publication(s) were not found by the Facility Reading Committee to cause concerns to the safety and security of the inmates and staff within the facility.

Third, the court must consider "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison." *Thornburgh*,

490 U.S. at 418 (citing *Turner*, 482 U.S. at 90).  The unrebutted evidence presented by Defendants shows that accommodating Mr. Dmytryszan's asserted rights and permitting access to the *Eyewitness Guide* would have a negative impact on prison safety and order.  *See* [#98-1 at ¶¶ 34-44; #98-2 at ¶¶ 15-26; #98-3 at ¶¶ 15-26; #98-4 at ¶¶ 15-26; #98-5 at ¶¶ 15-26].

Fourth, the court considers whether the censorship of the *Eyewitness Guide* is an "exaggerated response" to the problem at hand.  *Turner*, 482 U.S. at 90-91.  "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard."  *Turner*, 482 U.S. at 90-91.  Plaintiff provides no evidence, and the court finds none in the record before it, that the Facility Reading Committee's decision to censor the *Eyewitness Guide* was an "exaggerated response" to the problem of protecting inmate and staff safety and security.

Considering the four *Turner* factors, the court finds that Defendant has met its burden to establish that no genuine issues of material fact exist as to whether the Facility Reading Committee's decision to censor the *Eyewitness Guide* was reasonably related to a legitimate penological interests.  Accordingly, for the foregoing reasons, the court concludes that in light of Defendants' uncontroverted facts, Plaintiff has failed to carry his burden of establishing that there is a genuine issue of material fact that his First Amendment right has been violated that would preclude summary judgment.

IV.     **Plaintiff's Due Process Claim**

Mr. Dmytryszyn also alleges that he was deprived of the right to due process when the Defendants made the decision to censor the *Eyewitness Guide*.  [#28 at 10]. He claims that he was not provided the appropriate appeal form to submit to the Facility Reading Committee prior to its review of the *Eyewitness Guide*.  [#28 at 9].  He further claims that Defendants failed to provide him with an opportunity to be heard or appeal the censorship decision.  [#28 at 10].

In order to state a procedural due process claim, a plaintiff must first establish the existence of a recognized property or liberty interest. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001).   In the Tenth Circuit, liberty and property interest claims by prisoners are analyzed under the standard set forth in *Sandin v. Conner*, 515 U.S. 472 (1995).  "A deprivation occasioned by prison conditions or regulations does not . . . require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (quoting *Sandin*, 515 U.S. at 484).   Among other things, "an inmate's right to receive mail and other packages may be limited by prison regulations that are reasonably related to legitimate penological interests." *Id.* at 1222.

The court has already determined that there is no genuine issue of material fact regarding whether Facility Reading Committee's decision to censor the *Eyewitness Guide* was reasonably related to legitimate penological interests.  Accordingly, this court also finds that, in light of Defendants' uncontroverted facts, Plaintiff has failed to carry his burden of establishing that there is a genuine issue of material fact that his

procedural due process rights under the Fourteenth Amendment have been violated to preclude summary judgment.

## V.    Qualified Immunity

Because the court has already found that Plaintiff fails to adduce sufficient facts to survive summary judgment on his substantive constitutional claims, the court passes only briefly on Defendants' qualified immunity argument.   Defendants also assert that they are entitled to qualified immunity, which would bar Mr. Dmytryszyn's claims against them.   [#98 at 22-23].   "After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff."   *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001) (citing *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000); *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995).   First, the plaintiff must "establish 'that the defendant's actions violated a constitutional or statutory right.'"   *Id.* (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).   Second, "[i]f the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct."   *Id.* at 1156.   "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendants qualified immunity."   *Id.*

Here, as set out above, the court finds that Mr. Dmytryszyn has failed to come forward with sufficient evidence to establish that there is a genuine issue of material fact that any of the Defendants' actions violated a constitutional or statutory right.   Having found that summary judgment in favor of Defendants is appropriate, Plaintiff cannot carry his burden on either prong of the qualified immunity analysis.   Accordingly, this court concludes that Defendants are entitled to qualified immunity.

**CONCLUSION**

For the foregoing reasons:

(1)     This court respectfully **RECOMMENDS** that Defendants' Motion for Summary Judgment [#98] be **GRANTED**;[7] and

(2)     The Clerk of Court is directed to mail a copy of this Recommendation to Adam Dmytryszyn, c/o Carol Dmytryszyn 2024 Cleveland Way, Cambridge, MN 55008.

DATED: January 8, 2016                         BY THE COURT:


                                               s/ Nina Y. Wang
                                               United States Magistrate Judge

---

[7] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R.  Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d  573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52  F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's  order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).